FRITZ *et al. v.* BEEM *et al.*

No. 15276. OCTOBER 3, 1945.

788

*Durwood T. Pye, Allen Lockerman, John A. Dunaway,* and *Douglas W. Matthews,* for plaintiffs.

*George & John L. Westmoreland,* for defendants.

DUCKWORTH, Justice. (After stating the foregoing facts.) 1. Unless there is an abuse of discretion, the judgment denying the interlocutory injunction must be affirmed. Code, § 55-108. If the testimony of Eugene V. Haynes, the developer, is accepted as the truth, as the trial judge was authorized to so accept it, then the minimum restriction imposed upon the lot here involved is $6000 on both Montview Drive and Woodward Way, and the erection of the residence thereon at a cost of $6000 would satisfy this general restriction as well as the specific restriction in the deed, which is $6000. If the testimony of the defendant Beem is accepted as stating the truth of the cost, as the trial judge was authorized to so treat it, then the proposed building will cost more than $7500. Thus, in determining the question of whether the cost of the building violates the restriction applicable to the lot, it is unnecessary to determine whether the restriction on Montview Drive is $7500, as indicated by the circular in evidence, or $6000, as stated in Beem's deed and as contained in the general restrictions recorded as testified by Haynes, for there is evidence which

would have authorized the trial judge to find that the cost was sufficient to. satisfy the highest minimum required cost of $7500. This record leaves no room for serious doubt that there was evidence produced upon the hearing sufficient to show that the proposed building will cost $7500, and will thus satisfy the restriction contended for by the petitioners, except the contention that, since this was a corner lot, the minimum applicable to the two streets added together would constitute the minimum applicable to this lot. · This contention is unsound and is rejected, the true rule being that, if different minimums apply to two streets, then the building erected must satisfy the higher minimum, and it would thereby satisfy both.

But counsel for the petitioners, after laying down the unquestioned rule that requires a construction giving effect to the intention as of the date of the contract, or here the restrictions, makes a strong and impressive argument that, since at that time the gold content of a dollar was 25.8 grains .9 fine, and subsequently by proclamation of the President, No. 70272, on January 31, 1934, the gold content of a dollar was reduced to 15 5/21 grains .9 fine, the cost of the defendant's residence in dollars in 1945 does not satisfy the cost stipulated by the general restrictions in 1931; but that the cost now should be based upon the value of the gold content of a dollar when the restriction was imposed, and hence a restriction of $6000 then would require a cost, measured by the present dollar, in excess of $10,000. Counsel for the plaintiff in error contend that the majority opinion in Holyoke Power Co. *v.* Writing Paper Co., 300 U. S. 324 (57 Sup. Ct. 485, 81 L. ed. 678), in upholding an act of Congress (31 U. S. C. A. § 463) pointed out that the law does not apply to contracts for the delivery of. commodities, chattels, and substances, but applies exclusively to contracts requiring the payment of money. Admittedly, at the time the general restrictions were imposed, reference to a dollar was a reference to a dollar containing 25.8 grains of .9 fine gold, but all the parties concerned then and thereafter knew that this gold content was subject to change by law. Therefore, in the absence of a specific stipulation that the minimum dollar cost required by the restrictions should be in dollars of the gold content then provided by law or its equivalent in gold, the employment of the general term "dollars" requires a construction that it was in-

tended to refer to any dollar made legal tender by law, irrespective of the gold content. Under this construction, when the cost of the residence, measured by dollars of legal tender by law, equals the minimum dollars required by the restriction, there is no violation, and an inquiry into the subject of gold content is neither required nor authorized.

Counsel relies upon Virginia v. West Virginia, 238 U. S. 202 (35 Sup. Ct. 795, 59 L. ed. 1272), where it is stated, that "The contract is still to be interpreted according to its true intent, although altered conditions may have varied the form of fulfillment." The decision sustains our ruling, for, as above stated, the manifest intent in the present case was that the general term "dollar" not be restricted to a fixed gold content; and, notwithstanding a lawful change in its gold content, which would to that extent alter its intrinsic value, yet the intent of the parties, under the employment of the term "dollar," is fulfilled by the payment of dollars which are legal tender. Whitaker v. Dye, 56 Ga. 380, is cited and relied upon, but that decision has no application here, the facts being materially different. There was done in that case what might have been done, but was not done, in the present case, to wit, a stipulation was placed in the contract to the effect that the payment of $3530 would be made on December 25, 1869, in the currency then in circulation, "an amount equivalent to the aforesaid amount of the currency now in circulation, as it is valued at the date hereof. This October 12th, 1868." In construing that contract, this court properly held that the stipulation just referred to must have been complied with in order to satisfy the contract. Had the restriction in the present case contained a provision that the dollar referred to therein meant a dollar with a gold content of 25.8 grains .9 fine, then the contention made here would be sustained. Nor does Thomas v. Wolfe, 47 Ga. 295, cited by counsel, sustain the contention. It was there merely held that a contract requiring by its terms solvent notes was not satisfied by giving insolvent notes.

There was no abuse of discretion in denying the interlocutory injunction.

■ Error is assigned upon the action of the trial judge in refusing to allow counsel for the petitioners to ask the defendant Beem what he had heard, learned, or understood in his building opera-

tions and building in Haynes Manor. Counsel stated to the court that the petitioners were relying upon restrictions which need not be in writing; and the court stated that it would not enjoin him on a general plan which he had understood or heard about, that the court thought it must be in writing somewhere to put folks on notice, and that the court was restricting counsel to what was in writing. This action of the court is assigned as error, upon the ground that, where a subdivision is laid out and established under a general building and development plan, the restrictions imposed by such plan are binding upon all persons having notice thereof; and that such restrictions do not have to be in writing or contained in the deed to the person alleged to be violating them. Reference to the petition shows that the petitioners sought relief here upon the ground that specific restrictions in a general scheme or building plan were being violated; and it is alleged that all such restrictions were in writing, "Haynes Manor highly restricted out among the hills" and "A residential subdivision" being written upon plats which were recorded. Restrictions fixing a minimum cost of $7500 on Montview Drive and $6000 on Woodward Way were written upon a circular, which was introduced in evidence. Therefore, in confining the evidence to restrictions that were in writing, the court was simply confining counsel to the restrictions upon which the suit was based. There was no error in this. Nor did the petitioners suffer injury because the witness Beem was not permitted to state what he had heard or understood, since elsewhere in his testimony, as appears in the brief of evidence, this same witness testified that he had no knowledge of any general scheme or development plan of restrictions in the Haynes Manor subdivision, but that he knew that lots were being sold under restrictions, different restrictions applying to each lot, and the restrictions being contained in the deed. The court did not err in the ruling complained of. *Judgment affirmed. All the Justices concur.*

ATKINSON, Justice, concurring specially. I concur in the judgment and in the opinion in so far as it holds that, the building restriction having been made and defined in units of dollars, the violation of, or the adherence to, such restrictions must be measured by the same unit without regard to any fluctuation in the value of the dollar.