**Show of Shows, Inc., Plaintiff-Appellant, v. Illinois Liquor Control Commission, et al., Defendants-Appellees.**

**Gen. No. 51,818.**

First District, First Division.

August 4, 1967.

Masters & Sands, of Chicago (Julius Lucius Echeles, of counsel), for appellant.

William G. Clark, Attorney General of the State of Illinois, of Chicago (Richard A. Michael, Assistant Attorney General, of counsel), for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, Show of Shows, Inc., filed a statutory action in the Circuit Court under the Administrative Review Act (Ill Rev Stats 1965, c 110, §§ 264–279), as provided in sections 8 and 8b, of article VII of the Liquor Control Act (Ill Rev Stats 1965, c 43, §§ 153 and 154(a)), to review the administrative order of the Liquor Control Commission which revoked the plaintiff's liquor dealer's license. The Commission found that the licensee permitted the violation of the Cicero Ordinance, section 40–20(a), prohibiting the licensee from permitting solicitation of drinks on the premises by female employees and revoked its liquor license. The Circuit Court affirmed the Commission's order and plaintiff appeals. No question is raised as to the pleadings.

The plaintiff contends that the hearings before the Commission did not proceed in the manner provided by law and, therefore, in violation of plaintiff's right to a fair hearing in accordance with due process of law, and that the findings of the Commission were not supported by substantial evidence in the light of the whole record.

Under the Illinois Liquor Control Act, a local commission may revoke for cause a local license issued for premises within its jurisdiction. Under that act "for cause" includes the violation:

> . . . of any valid ordinance or resolution enacted by the particular city council, president or board of trustees or county board (as the case may be) or any applicable rule or regulations established by the local liquor control commissioner or the State commission which is not inconsistent with law. Ill Rev Stats 1965, c 43, § 149.

The involved ordinance of the Town of Cicero (section 40–20(a)) provided as follows:

> It shall be unlawful for any licensee, his manager or other person in charge of any licensed premises where alcoholic liquor is sold or offered for sale for consumption thereon to engage, employ or permit the engagement or employment of any female, or to permit any other female to remain on the premises, who shall solicit any patron or customer thereof to purchase alcoholic liquor or non-alcoholic liquor or for her, himself, or any other person therein. . . .

Section 274 of the Administrative Review Act provides that the hearing on review, "shall extend to all questions of law and of fact presented by the entire record before the court." The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct unless overcome by the manifest weight of the evidence. Nechi v. Daley, 40 Ill App2d 326, 188 NE2d 243.

The record before us reveals that Officer Sam Cuomo, accompanied by two other Illinois State troopers, entered the plaintiff's premises on February 17, 1966, at about 10:10 p. m. and sat at the bar. The bartender served him a whiskey and seltzer. He testified further, that Sandra

Carlos came over and asked him if he would buy her a drink, and he agreed. He said this occurred in the presence of the bartender, Mike Carta, who was standing straight across from him behind the bar. He said neither he nor the girl told the bartender what the girl would drink, but that the bartender "put two glasses in front of her and poured out two light colored drinks in two shot glasses from a clear bottle and took $2 from my money and rang it up." He said the girl had four more drinks, two at a time, under the same procedure.

Robert Teyema, an Illinois State policeman, testified that he accompanied Cuomo and Trooper Luzak on the evening in question. He said that he and Luzak were approached by two girls while the bartender was about seven or eight feet away. He related that the bartender came over, Peggy Powers asked him to buy her a drink in the presence of the bartender, which he agreed to, and then she told the bartender "Mike, give me a drink." He testified that the bartender served several rounds of drinks for the four of them and $6 was paid for each round. On redirect examination he testified that the girl said she worked there.

Jack Yoneover, secretary-treasurer of the plaintiff corporation and manager of the tavern, testified that he was in the tavern that evening and saw the officers and the three girls after they were under arrest. He said the girls had been hired to dance, were all under contracts and that they were members of the American Guild of Variety Artists. He testified that if they were invited by friends to have a drink they had permission to do so. The girls were instructed never to get inebriated on the premises and to conduct themselves like ladies. They also had a sign in the dressing room stating, "No solicitation of drinks."

Mike Carta testified that he was the bartender and he had served drinks to the police officers. He said the girls did not ask him to serve them drinks, but that the

113

officers separately ordered a round of drinks. He testified that he didn't hear any of the girls ask any of the officers to buy them a drink. He said all the drinks he served were at the request of the men.

■ Counsel for plaintiff acknowledges that he is aware of the rule that the decision of the Commission and the affirmance by the Circuit Court will not be disturbed unless it is contrary to the manifest weight of the evidence and the findings cannot be supported by substantial evidence in the light of the whole record. He argues, however, that it is not clear whether the girls solicited the drinks from the police officers, or if they did, that the licensee, manager or bartender knew about it or permitted it.

The evidence reveals that two officers testified that each of them was separately solicited to purchase drinks by two different females. Officer Cuomo testified, that the bartender was opposite him at the bar when the solicitation took place, and without any request by the girl, he placed two drinks in front of her, took $2 from Cuomo's money and rang it up. This testimony was substantially corroborated by Officer Teyema. The bartender testified that he served drinks to the girls at the request of the men and that he did not hear the girls ask the men to purchase drinks.

■■ The Commission saw and heard the witnesses. They were in a better position than this court to evaluate their testimony. The purpose of the Commission hearings is to enable it to resolve conflicting evidence and from it determine where the truth lies. Adamek v. Civil Service Commission, 17 Ill App2d 11, 149 NE2d 466. We believe the evidence amply supports the fact that the girls who were employed by plaintiff solicited the drinks and that the bartender knew about it and permitted it.

The plaintiff also contends that the Commission did not proceed in the manner provided by law and maintains that it was error for the prosecutor to ask Mr. Yoneover,

114

on cross-examination, whether when Cuomo asked him if he was the manager of the premises, he said no. Yoneover denied he ever said he was not the manager and testified that the police officer never asked him whether he was the manager. The record shows that the prosecutor asked:

Q. You denied then you were the manager?

A. I didn't deny anything. He didn't ask me anything.

Plaintiff argues that after laying the ground work for impeachment, the prosecutor made not the slightest effort to impeach and that the failure to introduce any affirmative proof was improper and highly prejudicial.

█ █ We have examined the record and note that this specific contention was not raised as an issue in the trial court. Absent such procedure whereby the trial judge would have an opportunity to pass upon such a contention, it cannot be raised for the first time in this court. True v. Civil Service Commission, 350 Ill App 248, 112 NE2d 519. However, assuming, but not admitting, there was some error it was at most harmless and not prejudicial. No such factual situation exists here as in People v. Hoffman, 399 Ill 57, 77 NE2d 195, cited by plaintiff, and that case is not in point.

We are brought to a consideration of a new issue which was first brought to our attention during oral argument when plaintiff's counsel informed us that the involved ordinance was repealed by the Town of Cicero on January 3, 1957, and that the repealer ordinance did not carry with it any savings clause. We gave leave to the plaintiff to file an additional brief on this point and to the defendants to make reply. The briefs were filed and we now consider the matter.

At the outset we find no merit to the defendant's contention that because the ordinance was repealed on January 3, 1967, and plaintiff's brief, filed on January 11th,

did not raise this point on that date or at any time before June 12th, the date of oral argument, that the motion was not timely and should not be considered.

The repealing ordinance of January 3rd recited, "Section 1. That Section 40–20 and subsections (a), (b) and (c) thereof or Article 1 of Chapter 4 of the Cicero Code of ordinances is hereby repealed."

The plaintiffs contend that the Town of Cicero has declared, as its public policy, that the acts complained of in 1966 are no longer illegal or improper and that since such declaration of public policy was without any savings clause (cf. section 4 of the Statutory Construction Act, Ill Rev Stats 1965, c 131, § 4), the case should revert to where it started in line with the cited authorities.

The defendants contend that there is a conflict in Illinois as to whether an Appellate Court will apply the law in effect at the time of its decision or the law in effect at the time of the decision of the trial court which is under review. They further argue that the decision of the trial court should be affirmed because:

> Plaintiff did not have his license revoked because he directly violated the ordinance but rather because he violated the Liquor Control Act which specifies as a ground for revocation the violation of any applicable local ordinance. . . . Although the ordinance has subsequently been repealed, the Act which served as the authority for the license remains unchanged. Since the authority for the revocation remains unchanged, the revocation should be sustained. Under any other approach a local governmental unit could effectively negate a state license revocation by changing an ordinance after the license had been judicially determined to have violated it.

■■■■■ The Legislature generally has the undoubted right to repeal all legislative acts which are not in the

nature of a private grant. Wall v. Chesapeake & O. Ry. Co., 290 Ill 227, 125 NE 20. Where the Legislature passes a repealing act and nothing is substituted for the act that is repealed, the effect is to obliterate such act as if it had never been passed.

> The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered. People v. Lindheimer, 371 Ill 367, 373, 21 NE2d 318.

 It is clear that the determination to revoke the defendant's license was based on the violation of an act which was repealed. The conclusion necessarily follows that in the absence of any saving clause in the repealing act as to pending suits for violation of the act, the court of review is without power to enforce the prior act.

The judgment of the trial court which was entered prior to the effective date of the repealed ordinance, is without fault, but must be reversed solely because the cause abated subsequently to its rendition. The judgment of the Circuit Court is therefore reversed.

Reversed.

MURPHY, P. J. and ADESKO, J., concur.