2015 IL App (1st) 142787
No. 1-14-2787
September 15, 2015

SECOND DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ANN E. RODI, ROBERT E. RODI, MICHAEL J. RODI, PATRICIA RODI, RODI PROPERTIES and RODI CONSTRUCTION COMPANY, | ) ) ) ) | Appeal from the Circuit Court Of Cook County. |
| | ) | |
| | ) | No. 08 L 007284 |
| Plaintiffs-Appellants, | ) | |
| | ) | The Honorable |
| v. | ) | Ronald F. Bartkowicz, |
| | ) | Judge Presiding. |
| JAMES K. HORSTMAN, CRAY HUBER HOSRSTMAN HEIL AND VANAUSDAL LLC, a limited liability company, f/k/a Iwan Cray Huber Horstman and Vanausdal LLC, a limited liability company, | ) ) ) ) ) | |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1      This lawsuit involves allegations that two attorneys separately acted improperly in providing legal services. Ann Rodi and related parties sued Ronald Roeser, alleging that his work for his client, Chrysler Financial Services, involved misconduct that injured Ann. The

circuit court dismissed the lawsuit against Roeser. Ann hired James Horstman to help with the appeal. The appellate court dismissed the appeal. Ann and some related parties then filed this lawsuit for legal malpractice against Horstman. Horstman moved to dismiss the lawsuit, arguing that Ann would have lost the appeal against Roeser no matter what he did. The circuit court entered a judgment in favor of Horstman. Ann now appeals.

¶ 2    We find that the applicable statute of limitations barred Ann from obtaining any recovery from Roeser, regardless of Horstman's actions. Because Ann and the other plaintiffs cannot show that Horstman's actions proximately caused them any damages, we affirm the judgment entered in favor of Horstman.

¶ 3                                    BACKGROUND

¶ 4    By 1987, Robert J. Rodi (Robert J.) owned controlling interests in several business ventures. Rodi Yachts (Yachts) sold boats at a boat yard located on Ashland Avenue in Chicago. Rodi Properties (Properties) owned the land and the building where Yachts operated its business. Robert J. also owned a 50% stake in Rodi Marine (Marine), which sold boats from a location near Fox River. In 1987, Robert J., together with his wife, Ann, and David Copeland, formed Rodi-Copeland Construction Company (Construction) to build houses on 90 acres of land Construction owned near Joliet.

¶ 5    On October 14, 1987, Yachts obtained a loan from Chrysler Financial Services Company. Robert J. personally guaranteed repayment of the loan. Yachts and Marine both signed a note for the funds Chrysler advanced. Properties obtained a loan from Lakeside Bank in 1989, in exchange for a mortgage on the lot Properties owned on Ashland Avenue.

¶ 6        In 1990, Robert J. distributed interests in some of his businesses to members of his family. He gave Ann all of his interest in Construction and a 52% interest in Properties. He gave an 8% interest in Properties to each of his six children, leaving Robert J. with no interest in Properties or Construction. Properties became a general partnership with Ann and the six children as the partners.

¶ 7                                Chrysler v. Robert J.

¶ 8        Yachts and Marine both defaulted on their loan from Chrysler. Chrysler, through its attorney, Roeser, sued Yachts, Marine and Robert J. in July 1990. The circuit court entered a default judgment in favor of Chrysler for $1,228,698.47. A boat manufacturer gave Yachts more than $800,000 for its inventory, and the funds went to pay the debt to Chrysler. In January 1991, the circuit court entered an order reflecting the reduction of the debt to $355,185.24.

¶ 9        In February 1991, Chrysler, through Roeser, filed Citations to Discover Assets with several banks that had loaned money to Properties and Construction. Roeser served a citation on Lakeside, stating falsely that $1,228,698.47 of Robert J.'s debt to Chrysler remained unpaid. Roeser served a similar citation on First Midwest Bank, which had loaned money to Construction.

¶ 10        Properties sought renewal of its loan from Lakeside. Lakeside refused to renew the loan. In March 1991, Construction applied to First Midwest for a loan to help pay for building houses on Construction's land. First Midwest refused to make any new loan to Construction. Construction sold off a large chunk of its land, at a substantial loss, so that it could continue paying contractors to build houses on its remaining land. In February 1992, Copeland

resigned from Construction and sold his interest to Ann, leaving Ann sole owner of Construction.

¶ 11    Robert J. filed a bankruptcy petition in February 1992. Yachts petitioned for bankruptcy at the same time. Roeser, acting on Chrysler's behalf, filed a lawsuit accusing Robert J. of fraudulently transferring his assets to his wife and family in 1990. The case ended with a judgment entered in favor of Robert J.

¶ 12    Lakeside sued to foreclose its mortgage on the land Properties owned. Properties did not contest the foreclosure. At the judicial sale in August 1992, Lakeside purchased the land for less than $1,700,000. Construction eventually sold the few houses it constructed and the land it owned, leaving it with no significant assets.

¶ 13                              Rodi v. Roeser

¶ 14    In 1996, Robert J. and Ann contacted Denice Gierach, an attorney who had worked with them in the past, and asked her for an opinion on whether they should sue Roeser and Chrysler. On June 28, 1996, Gierach sent Robert J. and Ann a letter in which she explained in detail the issues involved in the potential litigation against Roeser and Chrysler. She agreed with Robert J. and Ann that Roeser's misconduct had substantially damaged them. She explained that they would face considerable difficulty proving that the erroneous citations to discover assets caused the banks not to renew loans or make loans to Properties and Construction. She also said the five-year statute of limitations might bar their claims because Roeser sent the last erroneous citation in March 1991. She explained that they could argue that they did not suffer any damages due to the erroneous citations for some months. She summarized, "based upon the information that you show[ed] me, I would not

4

recommend that you proceed forward with any litigation against Chrysler, without any further direct information showing the causal connection between the Citation wrongfully issued and your damages."

¶ 15 Robert J. and Ann eventually decided that Ann should sue Chrysler and Roeser. Gierach agreed to represent Ann. Robert J. insisted that his children should help defray the costs of the lawsuit if they wanted to participate in any recovery from Roeser and Chrysler. Three of his children chose not to participate in the lawsuit, despite their ownership interest in Properties.

¶ 16 In July 1997, Gierach filed a complaint against Roeser and Chrysler, naming as plaintiffs Ann, Robert E. Rodi, Michael Rodi and Patricia Lefkovitz (the participating children). Ann and the participating children alleged that in February 1991, Robert J.'s attorney told Roeser that the citations stated an incorrect amount for the outstanding debt, and that because Robert J. no longer had any ownership interest in Properties and Construction, Roeser had no grounds to send the citations to discover assets to the banks that held assets of and made loans to Properties and Construction. Ann and the participating children alleged that "ROESER on behalf of CHRYSLER and with CHRYSLER's approval undertook a pattern of conduct designed to either unlawfully attempt to force the collection of the judgment amount from Robert J. Rodi's family who were not debtors to CHRYSLER or, alternatively, to ruin the credit of not only Robert J.. Rodi, but also his family, including those who are Plaintiffs in this action."

¶ 17 Roeser refused to correct the citations or withdraw them from the banks that held no assets of Robert J., Yachts and Marine. According to the complaint, at a 1991 deposition of

5

Robert J. in Chrysler v. Rodi, Case No. 90 CH 485, Roeser said that "when he got through with Mr. Robert J.. Rodi, Mr. Robert J. Rodi would never be able to borrow again."

¶ 18    Ann and the participating children further alleged that as a result of the erroneous citations, Lakeside froze the assets of Properties, First Midwest froze the assets of Construction, and Lakeside foreclosed on the lot Properties owned. Although an appraiser valued the lot at $7,000,000 in 1991, the judicial sale of the lot brought in less than $1,700,000. Ann lost all the value of her interest in Construction. The complaint also said that in 1994, Roeser contacted the FBI, and the FBI subsequently investigated the financial transactions of all of the Rodi family.

¶ 19    In count I of the complaint, Ann and the participating children alleged that Roeser (and Chrysler, acting through Roeser), intentionally interfered with the contract between Lakeside and Properties, and with the contract between First Midwest and Construction. Count II included the same allegations, but characterized the harm as interference with a prospective business advantage expected to arise from the continued lending relationships between Lakeside and Properties, and between First Midwest and Construction. The third and final count of the complaint characterized the same acts as negligent.

¶ 20    As Gierach expected, Roeser and Chrysler moved for summary judgment based on the statute of limitations. Gierach did not expect one argument Roeser made: Roeser and Chrysler argued that a two-year statute of limitations applied because Ann and the participating children charged Roeser with misconduct relating to his performance of professional services. See 735 ILCS 5/13-214.3 (West 1992). Roeser and Chrysler also claimed that Ann lacked standing to sue for the damages Construction suffered. In

6

opposition to the motion, Gierach presented Ann's deposition, where she swore that she first learned of her damages, as distinguished from Robert J.'s damages, in 1993.

¶ 21    The circuit court discussed the motion for summary judgment in October 2005. Gierach did not like what she heard. On December 7, 2005, before the circuit court had issued a ruling on the summary judgment motion, Gierach contacted Horstman to ask him to help with an anticipated appeal. Horstman accepted a monetary retainer and agreed to work on the appeal.

¶ 22    In an order dated December 20, 2005, the circuit court found that the five-year statute of limitations applied (see 735 ILCS 5/13-205 (West 1992)), and that Ann and the participating children sufficiently alleged delayed discovery of their damages. Accordingly, the court denied the motion for judgment based on the statute of limitations. The court added, "to the extent the remaining causes of action are rightfully those of Rodi Construction, these plaintiffs do not have standing to pursue them." Subsequently, in an order dated August 23, 2006, the circuit court said, "the individual Rodi plaintiffs do not have standing to bring this matter as it is properly the cause of action of Rodi Construction. Summary judgment is granted on all counts all issues in favor of defendants."

¶ 23    Horstman then began to work on the case. On September 6, 2006, he sent Gierach an email seeking clarification concerning several issues in the case. He specifically asked, "What was the reason for maintaining the action solely in the names of the plaintiff individuals, instead of or in addition to the names of Rodi Construction, Inc. and Rodi Properties?"

¶ 24    Horstman filed the notice of appeal on September 25, 2006. He later filed a brief on appeal. The appellate court dismissed the appeal for lack of jurisdiction, because Horstman filed the notice of appeal one day late.

¶ 25                              Rodi v. Horstman

¶ 26    On July 3, 2008, Ann and the participating children, along with Properties and Construction, (collectively, the plaintiffs), filed a complaint against Gierach and Horstman for legal malpractice. The plaintiffs claimed that they would have won millions of dollars in damages from Roeser and Chrysler if Gierach and Horstman had amended the complaint in Rodi v. Roeser, Case No. 97 L 8640 to add Properties and Construction as parties, if Gierach and Horstman had filed a timely notice of appeal in Rodi v. Roeser, Case No. 97 L 8640, and if Gierach and Horstman had asked the appellate court to permit them to add Properties and Construction as plaintiffs in Rodi v. Roeser, Case No. 97 L 8640. The plaintiffs claimed that Properties lost the lot on Ashland due to Roeser's misconduct, and that the circuit court should use the current value of that lot to assess the damages they would have recovered in Rodi v. Roeser, Case No. 97 L 8640 if Horstman and Gierach had not committed malpractice.

¶ 27    Gierach eventually reached a settlement with the plaintiffs and therefore is not a party to this appeal.

¶ 28    Horstman admitted that he filed the notice of appeal too late to preserve the plaintiffs' right to an appeal in Rodi v. Roeser, Case No. 97 L 8640. Horstman argued that none of his actions or inactions mattered because the plaintiffs would have lost on appeal no matter what he did. He also argued that if the circuit court had any reason to measure the plaintiffs'

8

damages, it should use the value of the lot in 1992, rather than the current value of the lot, as the measure of the plaintiffs' loss.

¶ 29    The circuit court first addressed the damages issue, finding that it would use the 1992 value of the lot to measure the plaintiffs' damages. In a second order, the court held that the delay in filing the notice of appeal made no difference, because Ann and the participating children would have lost on appeal on the issue of standing. Finally, in an order entered on August 14, 2014, the circuit court held that Horstman had no duty to suggest making a motion in the trial court or in the appellate court to add Properties and Construction as plaintiffs in Rodi v. Roeser, Case No. 97 L 8640. The circuit court granted Horstman's motion for summary judgment on the complaint. The plaintiffs now appeal.

¶ 30                                    ANALYSIS

¶ 31    We review *de novo* the order granting the motion for summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). The circuit court should only grant a motion for summary judgment where the pleadings, depositions, affidavits and admissions presented to the court show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). To show legal malpractice, the plaintiff must prove that the attorney's negligent act proximately caused the plaintiff to incur damages. *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 200 (2007). Because the plaintiffs' claim here involves negligence in the litigation of an underlying case, Rodi v. Roeser, Case No. 97 L 8640, to prove that Horstman's negligence caused them to incur damages, the plaintiffs need to prove that they

9

would have recovered damages from Roeser and Chrysler if Horstman had not acted negligently. See *Wildey v. Paulsen*, 385 Ill. App. 3d 305, 314 (2008). In essence, the plaintiffs must prove a case within a case. *Wildey*, 385 Ill. App. 3d at 314.

¶ 32                                    Roeser

¶ 33     Horstman contends first that the plaintiffs would have lost their claim against Roeser no matter what he did, because the plaintiffs first contacted him (and Gierach) about the potential claim long after the statute of limitations period had expired. Roeser argued to the circuit court that section 13-214.3 of the Code of Civil Procedure (735 ILCS 5/13-214.3 (West 1992)) governed the plaintiffs' cause of action, and the two-year limitations period had ended years before the plaintiffs filed their complaint. The circuit court, relying on *Ganci v. Blauvelt*, 294 Ill. App. 3d 508, 515 (1998), and *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 934 (S.D. Ill. 2006), rejected Roeser's argument. The courts in *Ganci* and *Bova* held that section 13-214.3 applied only in the context of an attorney-client relationship between the plaintiff and the defendant. Thus, under *Ganci* and *Bova*, because Roeser did not act as an attorney for any of the plaintiffs, section 13-214.3 did not apply to their causes of action.

¶ 34     In 2014, our supreme court rejected the reasoning of *Ganci* and held that section 13-214.3 applies "to all claims against attorneys concerning their provision of professional services." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 23.

¶ 35     The plaintiffs argue that *Riseborough* should not affect this case because our supreme court had not decided *Riseborough* before Horstman negligently failed to file a timely notice of appeal in Rodi v. Roeser, Case No. 97 L 8640. The plaintiffs claim that *Riseborough* should not have retroactive effect.

¶ 36    The argument rests on the assumption that *Riseborough* changed the law. It did not. See *Garrett v. Lawyers Inc.*, 273 Ill. App. 3d 545, 548 (1995). "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994). "When interpreting statutes, the statute does not mean one thing prior to a judicial interpretation and another afterwards. [Citation.] Where judicial interpretation of a statute is a commonsense construction based on the clear wording of the statute, it does not have to be applied only prospectively." *Marozas v. Board of Fire & Police Commissioners of the City of Burbank*, 222 Ill. App. 3d 781, 788 (1991).

¶ 37    At the time of Roeser's actions, in 1991, at the time Ann and the participating children sued Roeser in 1997, and at the time of the appeal in 2006, section 13-214.3 provided:

> "An action for damages *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." Ill. Rev. Stat. 1991, ch. 110, ¶ 13-214.3(b). 735 ILCS 5/13-214.3(b) (West 1996); 735 ILCS 5/13-214.3(b) (West 2006).

¶ 38    We will apply section 13-214.3 to determine whether the statute of limitations would have barred the plaintiffs from recovery in Rodi v. Roeser, Case No. 97 L 8640, regardless of Horstman's actions.

¶ 39    The plaintiffs argue that Roeser's acts do not constitute the provision of "professional services." Ann and the participating children alleged in Rodi v. Roeser, Case No. 97 L 8640,

11

that Roeser (1) issued incorrect citations to discover assets, (2) refused to correct the citations when Robert J.'s attorney pointed out the errors, (3) filed a complaint on Chrysler's behalf charging Robert J. with fraudulently conveying his assets to Ann and his children, (4) threatened to destroy the credit of Robert J. and his family, and (5) contacted the FBI to induce it to investigate the finances of Robert J. and his family.

¶ 40        By issuing the citations, Roeser attempted to collect money that Robert J., Yachts and Marine owed to Roeser's client, Chrysler. Filing citations to help a client collect money a debtor owes the client constitutes the provision of a professional service often carried out by attorneys. *Reid v. Ayers*, 531 S.E.2d 231, 235 (N.C. Ct. App. 2000). Filing a complaint also constitutes a professional service. *Remole Soil Service, Inc. v. Benson*, 68 Ill. App. 2d 234, 239 (1966). Roeser's threat, even assuming it indicates that Roeser may have had improper motives for filing the citations and the lawsuit, does not affect the limitations period or the character of his acts as professional services. See *Gomez v. Great Lakes Steel Division National Steel Corp.*, 803 F.2d 250, 255 (6th Cir. 1986). Thus, we find that the two year limitations period applied to the complaint against Roeser insofar as Ann and the participating children charged Roeser with filing false citations to discover assets in 1991 and with improperly filing a complaint charging Robert J. with fraudulent conveyance of his assets. By 1995 at the very latest, well before Ann and the participating children filed Rodi v. Roeser, Case No. 97 L 8640, their initial complaint against Roeser, the limitations period expired for the charges that Roeser filed false citations and improperly filed a complaint against Robert J. for fraudulent conveyance.

12

¶ 41    The plaintiffs also alleged that Roeser contacted the FBI in 1994 to instigate an investigation into the financial activities of Rodi and his family. The plaintiffs claim that this alleged misconduct does not constitute the provision of a professional service, so the two-year statute of limitations period does not apply.

¶ 42    However, the complaint in Rodi v. Roeser, Case No. 97 L 8640 does not allege any damages resulting from the investigation. Neither in the complaint nor in their depositions do Ann and the participating children suggest that the FBI investigation affected Lakeside's decisions, in 1992, not to renew the loan to Properties and to foreclose its mortgage. Ann and the participating children do not suggest that the FBI investigation led First Midwest, in 1991, to decide not to lend more money to Construction. They do not allege any new damages occurring after 1993. Therefore, assuming that Roeser contacted the FBI, and that the contact does not qualify as the provision of professional services, the complaint in Rodi v. Roeser, Case No. 97 L 8640 failed to state a viable cause of action against Roeser. The plaintiffs have not presented evidence that could support a finding that Horstman's misfeasance or nonfeasance proximately caused them to lose their claims against Roeser in Rodi v. Roeser, Case No. 97 L 8640. Therefore, we affirm the order granting Horstman's motion for summary judgment on the complaint insofar as the plaintiffs seek to recover for the loss of claims against Roeser.

¶ 43                                Chrysler

¶ 44    The plaintiffs argue that section 13-214.3 would not have protected Chrysler because Chrysler is not an attorney. They also note that Ann and the participating children alleged, in Rodi v. Roeser, Case No. 97 L 8640, that Chrysler approved Roeser's actions.

¶ 45    We find that all of the plaintiffs' claims against Chrysler rest on a theory of *respondeat superior*. See *Young v. Cerniak*, 126 Ill. App. 3d 952, 965-66 (1984). In cases involving *respondeat superior*, the statute of limitations applicable to the agent also applies to the principal. *Penkava v. Kasbohm*, 117 Ill. 2d 149, 157 (1987); *Medina v. Taylor*, 185 Ill. App. 3d 808, 811-12 (1989). Therefore, the two-year limitation period of section 13-214.3 barred the plaintiffs' claims against Chrysler. The plaintiffs have not presented evidence which could support a finding that Horstman's acts or failures to act proximately caused them to lose their claims against Chrysler. Accordingly, we affirm the order granting Horstman's motion for summary judgment.

¶ 46                          Motion for Leave to File a Sur-Reply Brief

¶ 47    Horstman filed a motion in this court to file a sur-reply brief to address issues unrelated to the statute of limitations. We took the motion with the case. We find no need for any further briefing, and therefore we deny the motion.

¶ 48                                      CONCLUSION

¶ 49    By the time Ann first contacted Gierach to inquire into the possibility of suing Roeser and Chrysler, the limitations period had already expired for any claim arising out of Roeser's performance of professional services as an attorney. Nothing Horstman did or failed to do had any effect on the viability of the lawsuit against Roeser and Chrysler. Therefore, we affirm the circuit court's judgment entered in favor of Horstman.

¶ 50    Affirmed.